The final case this morning, this afternoon, I guess now, U.S. v. Addison. May it please the court, good afternoon, your honors. Michelle Jacobs, appearing on behalf of Frederick Addison. The errors which occurred during the case agent's testimony here during trial strike at what I would suggest is really the heart of fundamental protections in criminal trials. Those errors, in totality, undermine Mr. Addison's constitutional right to the protections afforded by the presumption of innocence and burden of proof, and ultimately denied Mr. Addison his right to a fair trial. And it's for that reason that I would ask that the court vacate his convictions and remand for a new trial. As we've laid out in the brief, there are really three, as I would say, cumulative errors here, or errors in totality. The first coming from the agent, who was also qualified as the government's expert witness, the agent testifying to his perfect track record. Of course, he was goaded into saying it. I would respectfully disagree. We're reading it differently, then. I am reading it differently, and the reason that I'm reading it differently is that defense counsel specifically used the word could, is really, I think, the key in this series of questions. He started by asking, of course, about the importance of being accurate. The agent really, I mean... Of course, the proper way to ask the question without getting hit is people make mistakes, don't they? Well, right, that's one way, or just yes. And you have made mistakes yourself, and quit. Except that the defense counsel never asked the agent about whether he had made mistakes. The question was, if you're not accurate, it could lead... If you're not, and that's not personal? Okay, all right, let's make it personal. It could lead to... All right. The only answer to that question, I would suggest, is yes. Of course, if you're not careful, could it? Yes. You know, one of the things about cross-examination is you're walking through a minefield. I don't disagree with that, but I don't think that it ever... Okay, we can disagree. Go ahead. I'd hate to think we disagree on almost anything, Judge. What I would suggest is that this series of questions never asked, how many times have you gotten the wrong guy? How many times have you arrested the wrong guy? Have you ever been involved in a criminal prosecution where the guy turned out to be innocent? It was nothing like that. And so having the agent... Well, he says, it's never happened before. I have never been inaccurate and prosecuted the wrong person. How does he know? There you go. I mean, really, how does he know? Well, he asked him the question. But again, he didn't ask him the question, have you ever got the wrong guy? But in any event, I would suggest that that... I can't tell you the answer the way you want it to come out. I mean, that's designed to bring out that kind of answer, it would seem to me. Well, I would suggest that... Yes, on two times I charged a guy, and he was not the one that the state's attorney or the government chose to charge. Okay, but again, if you read the entire page, it's at page 14 of that day of trial, the tenor, absolutely the tenor of the questions and the questions themselves, I would suggest are asking just about the importance of being accurate, not about this agent. Yes, but see, the problem is, in the first question, he already has this suggestion of the wrong person, because it says, because if you are not accurate, it could lead to the prosecution of the wrong person. The first time he answers, he says, I guess if you're very inaccurate, it could lead to the prosecution of the wrong person, that would have been a good time to sit down or go to a new area. It goes on. He goes on. That would be a yes, then, wouldn't it? He says, not necessarily, still not going there. Question, it couldn't happen, open-ended, no idea what the answer is. It has never happened before. I've never been inaccurate and prosecuted the wrong person. So see, the whole suggestion of wrong person came from the defense counsel. He didn't say it initially. I don't disagree that the suggestion of wrong person came from defense counsel. But the questions repeatedly were, it couldn't. And then he still doesn't leave it alone. So you've never been inaccurate? And he says, to the point where I prosecuted the wrong person, no, I have not. Have I made mistakes? Absolutely. So just open the door to that. Try another attack. Well, okay, and I will. Again, but I would say, just to sort of close on this, I understand you may disagree, but I do think that if defense counsel had asked about this agent's personal track record, that's one thing. He didn't. But there are two other errors here that I would suggest, in totality, really present a significant problem. The next one, and probably the biggest one, is the gun evidence. The what? The gun evidence. The defense counsel, or excuse me, the case agent was asked. Well, he didn't get to that, did he, really? Did he get to the gun? Yes, he did. He absolutely did. The question was, basically, did you arrest, all of these things happened, did you arrest Mr. Addison? Yes. But then the question was posed, why? Now, the government suggests that the reason that they had to put in that this other actor had a gun was because, and the only reason that they've ever suggested that that evidence had to come in is because without it, it would leave the conceptual void in the story. Now, the government had just presented a videotape narrated by the case agent, right, suggesting that Mr. Addison had sold drugs to an informant, or not an informant at the time, but a cooperator, post-arrest cooperator. That person had testified, narrated this video. I would suggest that they certainly thought that they had sufficient evidence, at the point that Mr. Addison was arrested, to arrest him. They've never suggested that Mr. Addison knew about the gun, was involved in any way in the gun. Mr. Grinston, the person who had the gun, was not charged as a co-conspirator, has never been alleged as a co-conspirator. In fact, in Mr. Addison's pre-sentence report, they don't even suggest that the gun was in some way attributable to him. And yet... He called Mr. Addison, made the call to this gentleman? Well, there is a phone call on the video, yes. You can see him making a phone call, and that's it. But again, had they wanted to attribute the gun, had they wanted to attribute some sort of conspiratorial Pinkerton liability or something like that, that's one thing. They've never, as justification for that gun, said that there was evidence that this was reasonably foreseeable to Mr. Addison. Similarly, the public safety evidence, as the government calls it, I mean, it sort of goes hand-in-hand with the gun, I suppose. But again, there's no conceptual void in the story if the jury hears or doesn't hear about that gun. He's not charged with a firearm offense. He's charged with distributing to the person who, this Mr. Robinson who testified, and possession with intent for the drugs that they say were in the house next door. There's nothing in the trial that made that gun relevant and made the neighbor's lack of drug dealing or public safety relevant. And so I would suggest that in combination, these three errors have violated Mr. Addison's right to a fair trial, and for that reason his convictions should be vacated and the case remanded for a new trial. Thank you. Mr. Garrison. May it please the court, I'm Bob Garrison. I'm an assistant U.S. attorney in the Southern District of Illinois, and I was the prosecutor on this case. I worked with a special assistant, but I did try the case, so I am familiar with the evidence. I was going to start with the invited error, and I think I will do that anyway, although in its questions to Mr. Addison's counsel. Wait, wait, are you going to get us to change our mind? No, no, I'm actually not. Why don't you shut up and roll on? That's right, roll on. And your second point? Well, before I go to my second point, I do want to just suggest a framework for analysis on the invited error. I think what defense counsel, trial counsel was trying to do was persuade the jury that Master Sergeant Beliveau was boastful, arrogant, and therefore unbelievable, that that was a conscious trial strategy. And as support for that, look at what he said in closing argument. Not only did he not drop the hot potato during cross-examination, he brought it up again in his closing argument and emphasized it. Now, defense counsel's theory on why he did that, it was such a horrible error, she had to rectify it. The government's theory is quite the contrary. He thought he had hit on a rich vein of legal opportunity and wanted to exploit it. So I wanted to explain my suggested conceptual analysis for the invited error argument. In this case decision in Rossby, it was stated, an invited error will not be permitted. We don't need to hear any more of that. Get to the gun. Why was the gun relevant? Because I don't see why the gun testimony was relevant. Why don't we keep going? He's changing my mind. Oh, is he? Oh, okay. Well, with that in mind, I will indeed go to the gun. The testimony at trial, Your Honors, was that the police established surveillance on that house for eight hours that day. For eight hours they let the operation continue, and for two hours of those eight hours they filmed the events that were there. Suddenly, and for no reason without the evidence of the gun, the jury would just hear, and then before it was dark, while this operation was ongoing, we went up and arrested Addison and Grinston. That would leave the jury with a conceptual void to speculate, well, why if you're working all day and the thing is still going on, did you suddenly stop it? And I think the court correctly ruled that it was relevant for that purpose, for the conceptual void. Well, it could have just been that it was time to close it out because they had been there all that time. This gun wasn't tied to him. It was somebody else's gun. Well, that's my point. How does it prejudice Addison then that Grinston had a gun? Well, because guns, you know, it's problematic. Some people have adverse reactions to guns. Why even bring guns in the picture if it's not tied to the defendant? The court overruled the defense objection on relevance grounds on the basis that the jury has a right to hear why the operation stopped at this point. I understand that. And I'm saying that, you know, it's this conceptual void. I'm just saying the court has to weigh the conceptual void and also the prejudice of having a gun in the game that doesn't belong to the defendant, nobody tied it to the defendant, or anything like that. Nor did the government. The government never argued that the gun had anything to do with the defendant. Well, that's good because there wasn't evidence that it did. And we didn't say it did. We didn't offer it for that purpose. But I'm trying to rush forward to get to something else, Your Honor, that I think is important. Yeah, well, don't rush. Finish me. No, no. Well, I mean, in 10 minutes one needs to move right along. Yeah, well, in 10 minutes one needs to answer the questions. Oh, yes, ma'am. Absolutely. But I wanted to talk about the abuse of discretion standard. The abuse of discretion standard obviously means that no reasonable person could have ruled the way the judge did on that objection. Also, under abuse of description, harmless error analysis applies here. This is the only case that I can recall trying in 31 years as a prosecutor where we have a full-color videotaped presentation for the jury where they can actually see the crimes being committed. This goes to harmless error. Mr. Addison's appellate counsel conceded in her reply brief that the government's evidence is strong. I think, Your Honor, that that's something of an understatement. If the jury is watching the crimes being committed in real time all by themselves any music in the background you can make it work? Well, it almost puts you in the scene like a Technicolor movie would. How long did this run? Two hours. So the jury was sitting there for two hours watching this? We fast-forwarded through certain parts. Okay, that's what I'm asking. So did you fast-forward it during this period of time where he discovered the Coke wasn't where he thought it was and he looked in his pants? No, they saw that. Did we wait 20 minutes until the guy shows up with a gun or did you circumvent that? After the police took the cocaine from where Addison had hidden it, we played the entire rest of the film. So there was no fast-forwarding from that point on. So you had how many minutes until the guy shows up with a gun? Very brief. Briefly. Very brief, just quite brief. I would say two or three minutes if I remember correctly. Returning to the harmless error analysis here, the harmless error, which clearly applies to an abusive discretion argument, requires that the court consider the strength of the evidence against the defendant, that being the videotape that was played for the jury where the crimes are actually being committed, and also directs the court to decide whether or not the result, which was reached, was inconsistent with substantial justice. In this case where the videotape and the eyewitness testimony are both presented to the jury, how could the business about the gun possibly lead to a result that was inconsistent with substantial justice when the evidence against the defendant was so overwhelming? And again, I tried to make this point before, and perhaps I did not do it well, but the analysis regarding the gun hinges on the conceptual void that the government suggests and the district court agreed would have been left that the jury had no way to analyze. So you think that the jury couldn't have concluded that the police could have decided to arrest Addison simply because they observed him commit several crimes? They had seen him, like you said, on the video commit these crimes. Well, the only objection was to relevance, and if the court abused its discretion and overruling the objection is to relevance, then clearly harmless error would then apply. Well, I understand the harmless error analysis. I'm saying, though, that in this void thing, the jury could have looked at the tape and determined that there was a decision to arrest Addison because they had actually seen him commit several crimes. Yes. Right, on the tape, like you said, in living color. It was right there, and they saw that. So all I'm doing is there could have been another explanation, and it didn't have to be that this void happened and so something dark happened that the police did or the agent did or anything. Yes, Your Honor, possibly, although on the tape, Addison and Grinston are arrested simultaneously. Grinston shows up, the police pull the plug, and the jury sees them both arrested simultaneously. If you take that in conjunction, what is the jury to make of that? Well, why did you suddenly arrest both of them? I mean, why did you? I think you can see my point that the jury is going to be left wondering, well, what does this other man, what did he do? I mean, what are we looking at here unless the police are permitted, as the court agreed they could be, to just tie up the story and explain why the plug was pulled at that exact point. So I don't want to belabor this if there are no further questions. Just one, when was the objection made to the showing of the person with the gun? When was that objection made? At the point where the witness has said, at that time we decided to terminate the operation and arrest the defendants. My question is, had they seen the film before, the defense counsel? Oh, of course. There was no objection made? Not prior to trial. Well, that was my question. They waited until the film got in, and then they made the objection. Yes. The objection to the question, why did you make the arrest at that point? Well, my question goes to that. They waited until the jury had already seen it. Oh, yes. I follow you now. Yes, they did, Your Honor. I thank you for your time. How much time? You have a minute. I'll take one more. Talk to us. I'll talk to you. Great. I conceded that there was strong evidence. I don't know how you couldn't have. But just because there's strong evidence in a criminal trial doesn't mean that the defendant doesn't have his rights to a fair trial. And I'll start with the gun. I mean, even talking about these arrests and that they had to understand why they were arrested, Taylor, the Supreme Court case says that arrests aren't evidence. You know, the fact that they were arrested was sufficient. They do not see the gun come out and explanations of the gun, and certainly because there were no allegations against Mr. Addison in that regard, I would suggest the gun wasn't relevant. There was a simultaneous objection made when the question was finally asked, why did you arrest? You saw the tape or whatever it is. No objection was made then, right? Yeah, but I don't recall seeing on the videotape, and I'd have to go back, because I have to admit I have not looked at it in the last few days or anything like that. I don't recall there being the gun being pulled. We'll go back and look at it. Please do. Please do. But I don't recall there being evidence on that videotape of the actual gun.  Your recollection is you couldn't see the gun on the tape. So it's the question after, why did you arrest, that there was a problem. But again, I'd prefer that you look at it as well. For all the reasons stated, I'd ask that the court vacate Mr. Addison's convictions. Thank you. Thanks to both counsel. The case is taken under advisement. The court will be in recess.